City of Rockford v. Russell.

## CITY OF ROCKFORD

V.

## CORNELIUS RUSSELL.

1. PROSECUTION AS POOR PERSON.—Allowing a plaintiff to prosecute his suit *in forma pauperis*, is a matter in a great measure to be left to the discretion of the trial court, and an appellate court will not interfere unless such discretion has been greatly abused.

2. STEREOSCOPIC VIEWS AS EVIDENCE.—It is a common practice to admit in evidence a plan or picture, shown to be a correct representation by preliminary proof, to aid the jury in a proper understanding of the case, and there is no difference in the application of the rule whether the picture is made by hand or by the art of photography, the real question being whether the view be a correct representation.

3. ALLEGATION AND PROOF OF DAMAGE.—Evidence of inability to attend to ordinary business by reason of the injury received, is admissible, there being an allegation claiming such damages, and the objection is not valid even if such allegations were necessary to admit the evidence in question.

4. INJURY OCCASIONED BY VICIOUSNESS OF HORSE.—The court is not prepared to say that the city would not be liable, even if the injury would not have happened but for the horse of appellee becoming frightened. Such occurrences are in the nature of accidents or mishaps incident to the use of horses, and come within the rule, that if ordinary prudence could not have foreseen and prevented the accident, and the injury would not have occurred but for the defect in the street, the city would be liable.

5. DUTY OF CITY TO PROTECT STREETS.—It is the duty of a city to so construct and maintain its streets as to make them reasonably safe for all ordinary travel, and if it fails in this duty it may be liable if a compliance with this duty would have prevented the injury.

6. CONSTRUCTION OF GUARDS OR RAILINGS ALONG STREET.—Whether a guard along the street in question was necessary for the proper protection of travelers, was a question for the jury, and they should have been left free to determine it from the evidence, without any instruction from the court that it was necessary.

7. CITY ONLY BOUND TO REASONABLE CARE.—If the city has so con-

structed its street that at the time of the injury it was suitable for the accommodation of the traveling public, and was in a reasonably safe condition for the protection of those using it for the purpose of travel, they at the time using ordinary care for their own safety, then it has discharged its duty to the traveling public.

8.   INSTRUCTION UPON COMPARATIVE NEGLIGENCE.—An instruction giving the rule of comparative negligence should use both terms " slight " and " gross," in defining the degree of negligence of the respective parties.

APPEAL from the Circuit Court of Winnebago county; the Hon. JOHN V. EUSTACE, Judge, presiding.   Opinion filed November 2, 1881.

State street, in the city of Rockford, where it crosses Kent's Creek, is raised by embankments about ten feet above the natural surface of the ground.   The bridge was built by the city that height, and the approaches to the bridge made by filling in earth of the same height at the abutments, and gradually descending from the bridge to the natural level of the ground. The bridge is thirty-two feet wide, including the sidewalks, but only one sidewalk extends west from the bridge, and that is located upon the north side of the embankment.   The embankment constituting the roadway running west from the bridge is about 39 feet wide, until it approaches quite near the bridge, when it sharply narrows to the width of the bridge.

There was no railing upon the south side of the embankment.   On the 11th day of January, 1879, the plaintiff drove over the bridge with a horse and sleigh from the east, and after transacting his business was returning, and when within about twenty feet of the west end of the bridge, the horse suddenly turned his head to the left, or towards the sidewalk, and shied to the south, and giving a second spring, jumped over the south wing of the abutment of the bridge, taking the sleigh and plaintiff with him, to the ice below.

The plaintiff was quite seriously injured, and the horse and cutter slightly.

This action was brought by the plaintiff against the city to recover damages for such injuries, claiming that the city was negligent in not constructing and maintaining said embankment in a reasonably safe condition, and especially in not

erecting a railing along the south side of said embankment. Upon trial the plaintiff recovered a verdict and judgment for $1,000, and the city appeals to this court, assigning various errors upon the record.

Mr. R. W. CRAWFORD, for appellant; that it was error to allow plaintiff to prosecu e as a poor person, and this court will review the action of the trial court in that respect, cited Ball v. Bruce, 27 Ill. 332; Sterling Bridge Co. v. Pearl, 80 Ill. 251; Papineau v. Belgarde, 81 Ill. 61.

In the absence of any allegation of special damage, no evidence upon that point can be heard: Chicago v. O'Brennan, 65 Ill. 160; Adams v. Gardner, 78 Ill. 568.

In cases of this character each instruction should correctly state the law: President, etc. v. Carter, 2 Bradwell, 34; President, etc. v. Rogers, 2 Bradwell, 100; Freeport v. Isbell, 83 Ill. 440; LaSalle v. Thorndike, 7 Bradwell, 285.

The city is only bound to reasonable care in making and maintaining its streets so that they will be reasonably safe for ordinary travel: Centralia v. Krouse, 64 Ill. 19; Chicago v. Pixley, 84 Ill. 85; Joliet v. Walker, 7 Bradwell, 271.

The instruction as to comparative negligence was erroneous: City of Winchester v. Case, 5 Bradwell, 486; La Salle v. Thorndike, 7 Bradwell, 282; President, etc. v. Carter, 2 Bradwell, 34; North Chicago Rolling Mills v. Monka, 4 Bradwell, 664.

The city is not obliged to keep the whole width of its street of the same grade: Howard v. Inhabitants, etc. 16 Pick. 189; Farrell v. Oldtown, 69 Me.

If the appellee knew the bridge was dangerous, and he still persisted in going over, he cannot recover: City of Macomb v. Smithers, 6 Bradwell, 470.

Mr. J. C. GARVER, for appellee; that prosecution as a poor person is in the discretion of the trial court, cited Papineau v. Belgarde, 81 Ill. 61.

Evidence of inability to attend to business is competent in such cases: Schultz v. Lepage, 21 Ill. 160; Davenport v. Ryon, 81 Ill. 218; Crist v. Wray, 76 Ill. 204.

Leaving a street in the condition this was without a safe-guard, is *per se* negligence: Atlanta v. Wilson, 59 Ga. 544; Chicago v. Gallagher, 44 Ill. 295; Chicago v. Johnson, 53 Ill. 91; Chicago v. Hirg, 89 Ill. 542; Sterling Bridge Co. v. Pearl, 80 Ill. 251; Joliet v. Verley, 35 Ill. 58; Wharton on Negligence, §§ 403, 981; Pridiaux v. Mineral Point, 43 Wis. 513; Borough of Pittsten v. Hart, Weekly Jur. July 31, 1879.

Appellee used the street as other people did, for a public thoroughfare; this is not negligence that of itself bars a recovery: Reed v. Northfield, 13 Pick. 94; Wheeler v. Town of Westport, 30 Wis. 392; Milwaukee v. Davis, 6 Wis. 377; Aurora v. Hillman, 90 Ill. 61; Lovenguth v. Bloomington, 71 Ill. 238.

Appellee had no notice of the fright of his horse. It was necessary that he should pass over this street, which he did, using ordinary care: Aurora v. Pulfer, 56 Ill. 270; Aurora v. Dale, 90 Ill. 46; Lower M. T'p v. Merkhoffer, 71 Pa. St. 276; Wharton on Negligence, §§ 403, 976, 997.

PILLSBURY, J.   It is first urged as a reason why this judgment should be reversed, that the court below erred in allowing the cross-motion of plaintiff for leave to prosecute his cause as a poor person under the statute.

This is a matter that must be left in a great measure to the discretion of the trial court, and with which an appellate court will not interfere unless such discretion has been greatly abused.   In this case we perceive no such abuse of the discretion vested in the court below as would authorize us to review its action in that regard.

The next contention of the appellant is that the court erred in admitting in evidence a stereoscopic view of the south side of the bridge and the embankment; also one of State street west of the bridge, showing the surface of the roadway or street and the west end of the bridge. The court also allowed in evidence a stereoscope to aid the jury in the examination of the views. Preliminary to the offering in evidence of such views the plaintiff called W. T. Seeley, who testified that he was a photographer skilled in the art; that the process of tak-

ing stereoscopic views was the same as in photography; that the views were taken by him and were correct.     He also stated from what points the views were taken.

A. C. Burnham also testified that he was a photographer and had been for ten years; and after examining the views through the stereoscope, testified that the "effect is very material, and if the view is properly taken, looking through the glass at the picture, the effect is that of nature viewed with two eyes."

There was no error in this action of the court.    It is a common practice to admit a plan or picture shown to be a correct representation by preliminary proof, to aid the jury in a proper understanding of the case, and we do not see any difference in the application of the rule whether the picture is made by hand or by the art of photography, the real question being whether the view be a correct representation.    Marcy v. Barnes, 16 Gray, 161;   Hollenbeck v. Rowley, 8 Allen, 473;   Cozzens v. Higgins, 1st Abb. N. Y. 451;   Ruloff v. The People, 45 N. Y. 213;   Uddergook v. Commonwealth, 76 Penn. St. 340;   Church v. Milwaukee, 31 Wis. 512.

Again, the appellant complains that the court allowed the plaintiff to show that in consequence of the injury he was prevented from attending to his ordinary business.    The point of the objection is that there is no averment in the declaration under which such proof can be admitted.    We have examined the declaration, and find that in the first count thereof such a claim for damages is distinctly made, and the objection is not valid even if such allegations were necessary to admit the evidence in question.

The defendant below introduced some evidence tending to show that the horse was of a vicious disposition, and claimed that the action of the horse in jumping off the embankment, was the result of such viciousness, or that he became frightened, or suddenly attacked with disease, so as to render him uncontrollable, and that in either event, as the city was not responsible for the actions of the horse, and the injury being the result of such action, it was not liable in this suit, even if it was negligent.

These views of the law entertained by counsel were embodied in the refused instructions, asked by the defendant, and it is now insisted that it was error to refuse them.

We have examined all the refused instructions upon this point, and find that each and every one of them restricts the liability of the city within too narrow limits.

We are not prepared to hold that because the injury would not have have happened if the horse had not become frightened or suddenly diseased, the city cannot be held liable. Horses do frequently become frightened, and sometimes fractious, without any fault of the driver; indeed, it may be said that such occurrences are in the nature of accidents or mishaps incident to the use of horses in every day travel and business, and one of that character that comes within the rule, that if ordinary prudence and sagacity could not have foreseen and prevented the accident, and the injury would not have occurred but for the defect in the street, the city would be liable.    Joliet v. Verley, 35 Ill. 59.

While a city may not be responsible for the actions of the horse, caused by taking fright or becoming suddenly diseased, yet it is required to so construct and maintain its streets as to make them reasonably safe for all ordinary travel, that passes along them, and if it fails in this duty it may be liable, if a compliance with such duty would have prevented the injury. So here, if the appellant was negligent in not constructing a railing along the south side of the embankment, sufficient to make the roadway reasonably safe for ordinary use and travel, and such railing would have prevented the horse of appellee from going over the wing wall, the appellee could recover, if his own negligence was not such as to debar him. Of course if a railing sufficient to secure ordinary travelers from injury by being thrown over the embankment in consequence of any accident or mischance incident to the use of the street in an ordinary manner, and which are liable to occur without the fault of those traveling thereon, would not have prevented the horse of appellee from going over the embankment wall, because of his violent conduct at the time, the city should not

be held liable, although there was no railing, for in such case it could not be said that the defect caused the injury.

If the horse was of a vicious disposition and his action at the time was the result of such vice, then such fact can and should be considered by the jury in connection with the evidence, if any, that the appellee knew of the vice of the horse or could have ascertained it by the exercise of reasonable inquiry or diligence; in determining the question necessarily arising in the case whether the appellee was in the exercise of that degree of care which would authorize a recovery by him. Centralia v. Scott, 59 Ill. 129. These observations are based upon the theory that the jury may find that the city was guilty of negligence in failing to maintain a railing on the south side of the roadway, but whether the city was or was not negligent in this particular is a question for the jury, and upon which we express no opinion.

The defendant has the right to have this question submitted to the jury under proper instructions, and this leads us to notice that the court modified the defendant's eleventh instruction, and in such modification conveyed the impression to the jury that in order that the roadway should be considered reasonably safe, it was necessary that a guard should be placed along the side of the embankment. This was invading the province of the jury, and should not have been so done. Whether a guard was necessary, was a question of fact for the jury, and they should have been left free to determine it from the evidence without any instruction from the court that it was necessary. If the city has so constructed said street and maintained it, that it was at the time of the injury suitable for the accommodation of the traveling public, and was in a reasonably safe condition for the protection of those using it for the purpose of travel, they at the time using ordinary care for their own safety, then it has discharged its duty to the traveling public.

The defendant asked the court to give the following instruction to the jury: "10th. If the jury believe from the evidence, that the injury complained of by plaintiff was not caused by the negligence of the city, but was occasioned by negligence of

the plaintiff in driving at that place the horse he was then driving, then the court instructs the jury that the plaintiff cannot recover."

Which the court modified by adding the following words : " If the jury believe from the evidence, that such driving of said horse was negligence, and that it caused the injury without negligence on the part of the city, great in comparison therewith," and gave the same as modified.

This modification under the repeated decisions of our Supreme Court, does not state the correct rule of comparative negligence. As we understand the rule, in order for a plaintiff to recover where he has been guilty of negligence, it must appear that his negligence was but slight, and it must be also shown that the negligence of the defendant was gross in comparison with such slight negligence of the plaintiff. C. & A. R. R. v. Mock, 72 Ill. 141; I. B. & W. R. R. v. Flanigan, 77 Ill. 365; R. R. I. & St. L. R. R. v. Irish, 72 Ill. 404; C. & N. W. Ry. v. Dimick, 96 Ill. 46; Stratton v. Central City Horse R. R. Co. 95 Ill. 25, and the instruction should use both terms in defining the degree of negligence of the respective parties.

This modification does not require the jury to find that the negligence of the plaintiff was *slight*, but allows a recovery, although the plaintiff was guilty of any degree of negligence, provided the jury should further find that the defendant was guilty of such negligence as to appear gross when compared with that of the plaintiff. For the errors noted we reverse the judgment and remand the cause for a new trial, when the instructions can be made to conform to the views herein expressed.

Judgment reversed.