68   255
168s  318

## City of Peoria v. Amelia Gerber, by her Next Friend.

1. CITIES AND VILLAGES—*Their Duty as to Streets.*—It is the duty of a city to maintain its streets in a safe condition, and such duty can not be evaded or delegated to others, and if a city by its direct act or authority causes or permits its streets to get out of repair and neglects to use reasonable diligence to repair them after notice, it is liable for in-juries received by any person on account thereof, while such person is exercising ordinary care.

2. NEGLIGENCE—*Traveling on Defective Streets.*—Traveling upon a street by one having knowledge of dangerous defects therein, does not necessarily constitute negligence.

Trespass on the Case, for personal injuries. Appeal from the Cir-cuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presid-ing. Heard in this court at the May term, 1896. Affirmed. Opinion filed December 9, 1896.

W. T. IRWIN, city attorney, for appellant.

WINSLOW EVANS, attorney for appellee.

MR. JUSTICE LACEY DELIVERED THE OPINION OF THE COURT.

This was an action on the case by appellee against appellant to recover damages for an injury received by her, her ankle and foot being sprained and dislocated, and the tendons and ligaments scratched and broken, the said injury being caused by one of the streets in the said city of Peoria being out of repair.

The cause was tried by a jury and resulted in a verdict for the appellee of $2,500.

The accident took place on the 27th day of October, 1894, about the middle of block 800, on North Adams street, in the city of Peoria.

The Central Horse Railway Company had its railway track in the middle of the street, kept there by permission of the city of Peoria, and the said Central Railway Company was operating and maintaining its street railway track on said street on the day of the accident, and had been for some time.

Adams street, in said city, runs northeast and southwest. Brick paving had been laid by the city or contractors on the northeast side of the street, between the outer rail of the said track and the curb line from Hamilton street, many blocks above and beyond where the injury occurred, and barriers removed and the street opened for travel.

The Central Railway Company had removed the paving from between the rails of the track and from the center space between the two tracks several weeks prior to the injury.

The railway company had also placed its tracks at the grade required by the city ten days to two weeks before the injury to appellee, of all which the city had due notice.

The city and the Central Railway Co. were in a dispute as to whose duty it was to repave the street between the rails and between the two tracks, the city contending that

it was the duty of the railway company and the railway company that it was the duty of the city, so neither made the necessary repairs.

The city had due notice that the railway company did not intend to repair the street on October 2, 1894. A resolution was introduced into the city council on the 26th day of October ordering the said tracks of the railway company to be removed, reciting in the resolution that the excavations, gutters and trenches were dangerous to the public safety and prevented a reasonable use of the street, and that they had become a public nuisance.

The evidence shows that on the afternoon of the 27th day of October, 1894, appellee, with Preston Clark, was in a covered cart drawn by one horse and was driving along between the car tracks and the curb on the brick pavement, the cart being about three feet from the car track, and after they had gone to about the middle of the 800 block or a little beyond it, the horse which Clark was driving became alarmed and frightened, apparently at an approaching car. At this he checked, shied to the left, surged a little, started again, surged on around to the left, and as he did so, Mr. Clark restraining him with the lines, he backed the cart, the right wheel of which first fell into the ditch between the two rails of the track, then the horse, surging back, his rear feet also fell into the excavation. This served to confuse and further frighten him. He made another lunge, swinging around to the left still further, until his head was turned in the opposite direction from the one in which he had been going, and in doing so he forced the left wheel over the further rail of the track and into the center space between the two tracks; in lunging he caught a shoe of one of his hind feet in the iron chair which rests on the tie and supports the rail about three inches above the tie. Thus catching his foot in lunging he was thrown, or fell, the shoe being drawn entirely from his foot. The fall of the horse pitched the body or bed of the cart forward and the front down, and thereby the appellee was thrown from the cart onto the rail or track just beyond the middle space, and

from the fall her limb and ankle were severely injured, so much so that she could not use it at all when she got up. After she had scrambled across the street and the horse had been righted and again hitched to the cart she had to be carried across the street and placed in the cart to be taken home.

The injury to appellee's ankle was very severe, and she had no power herself to straighten the foot. It was two weeks after the injury before the swelling could be reduced sufficiently to put it in a plaster cast, and when it was put in, it remained there until Christmas of that year, so that the ligaments might reunite and the foot be kept straight while this union was going on. It also appears that the ankle will never be as good as before, will always be weak, and if she makes a misstep or stumbles, the foot will be likely to turn under and throw her down.

Appellee was unable, before the following April, to return to where she was attending school.

It is contended by appellant that the evidence was not sufficient to support the verdict; that the damages were excessive, and that the court erred in giving and refusing instructions.

We think the evidence was ample to show the negligence of the appellant in not keeping the street in proper condition.

The city had actual notice of its condition for a long time and failed to repair it or cause it to be repaired, and in fact had actual notice of the dangerous condition of the street, and declared by its own resolution, that it was in a dangerous condition.

It was the duty of the city to maintain the streets in a safe condition, and such duty could not be evaded or delegated to others, and if the city by its direct act or authority caused or permitted the street to get out of repair, and it failed to use reasonable diligence to repair it after notice, it would be liable for injuries received by any one on account thereof while such person was exercising ordinary care. City of Springfield v. Scheevers, 21 Ill. 203.

The fact that the horse became frightened, if without the fault of the driver, would be no bar to appellee's recovery. City of Rockford v. Russell, 9 Ill. App. 229.

We see nothing wherein appellee or Preston, the driver, was negligent, or in want of the exercise of ordinary care at the time of the accident, or that they were negligent in driving upon the street under the circumstances. Wabash Ry. Co. v. Brown, 152 Ill. 484; P., Ft. W. & C. Ry. Co. v. Callighan, 157 Ill. 406.

The question of whether appellee and her driver were negligent in driving on that street, was also a question of fact for the jury. Village of Clayton v. Brooks, 150 Ill. 107.

We find no fault with the jury in finding the appellant guilty in the manner charged in the declaration. The amount of damages is also a question for the jury, and we do not think that they were so excessive under the circumstances and evidence in the case that the Circuit Court should have interfered. The injury was very serious and permanent in its character.

The third and fourth instructions given for appellee are complained of by appellant. The third instruction is a little obscure in telling the jury that if the city of Peoria, " knowing such condition of the street, neglected to put the same in reasonable safe condition within a reasonable time before the accident," etc., they should find the defendant guilty.

That instruction means reasonable time after notice, and, of course, it must be before the accident, and we think the jury could not have been misled, and especially as the evidence shows that the city had ample time to repair the street after having ordered it torn up.

We see no fault to find with appellee's fourth instruction given by the court, nor in the refusal of the court to give appellant's eighth, ninth and tenth refused instructions.

The jury was fully and fairly instructed on both sides.

Seeing no error in the record the judgment of the court below is affirmed.