CHICAGO & IOWA RAILROAD COMPANY

v.

ELLIOTT LANE, A MINOR, ETC.

*Railroads—Personal Injury—Crossing—Obstructions—Rate of Speed —City Ordinance—Minor—Prosecution by Next Friend as Poor Person —Instructions—Excessive Number.*

1. It is proper to permit a person to prosecute on behalf of a minor as a poor person, and it is within the discretion of the trial court to grant or refuse such privilege.

2. This court will not set aside a verdict as against the weight of evidence, unless it clearly appears that it is unsupported by the evidence; that the jury has been governed by prejudice or passion, or that it will result in injustice.

3. In an action against a railroad company to recover damages for injuries received in a collision at a railroad-crossing, it is *held:* That the evidence supports the verdict for the plaintiff; that the question whether a flagman was reasonably necessary, was for the jury; and that the failure of the city to require a flagman to be placed at the crossing in question is no excuse to the defendant, if reasonable care for the safety of the public required it to be done.

4. This court strongly protests against the practice of giving an unreasonable number of instructions.

[Opinion filed January 10, 1889.]

APPEAL from the Circuit Court of Ogle County; the Hon. WILLIAM BROWN, Judge, presiding.

Messrs. M. D. HATHWAY & WILLIAM LATHROP, for appellants.

Messrs. O'BRIEN & O'BRIEN, for appellee.

C. B. SMITH, J.   This was an action in case brought by Elliott Lane, a minor, by his next friend, Gilbert Lane, against appellant.   The injury complained of resulted from a collision between a passenger train on appellant's road and a team and wagon driven by appellee in the city of Rochelle, at a street-crossing, on the 29th day of July, 1887.   Bartholomew street runs north and south through Rochelle, and appellant's road runs through the city in an easterly and westerly direction, crossing Bartholomew street.   At the crossing of this street and the railroad the collision occurred, resulting in the loss of an arm to appellee.

It appears from the evidence that the train which collided with the wagon was going east and the wagon was going south on Bartholomew street.   On the north side of the railroad track, and just west of the line of the street, there was, on the day of the accident, and had been for a long time before, various and serious obstructions.   On the north side of the railroad right of way there was a coal chute, and west of that a tressel work ten feet higher than the track.   There was a thick hedge fence on the line of defendant's right of way, about

fifteen feet high, just north of defendant's track, coming up to the sidewalk, and west of that there was a high board fence. Just north of the coal chute there were some trees and a brick house and barn. These obstructions all lay so as to obstruct to a greater or less degree the line of vision of appellee as he came near the railroad-crossing going south.

The first count of the declaration charges that these obstructions were permitted to be on the defendant's right of way, and were of such character as to prevent persons approaching the track from the north from seeing approaching trains from the west, and that defendant was guilty of negligence in so allowing such obstructions on its right of way; and also charges that it ran its train at a high and dangerous rate of speed, and that it neglected to ring a bell or sound a whistle, as required by statute.

The second count alleges the existence of the same obstructions as in the first, and avers that by reason of its dangerous character it was the duty of defendant to keep a flagman at that crossing, and that it was guilty of negligence in not doing so.

Other counts charge negligence, in that the defendant ran its train on the day of the accident at a high and dangerous rate of speed, and in violation of an ordinance of the city of Rochelle prohibiting trains from running faster than ten miles an hour within its corporate limits.

The defendant pleaded the general issue. A trial was had, resulting in a verdict for the plaintiff, and assessing his damages at $2,500. After overruling a motion for a new trial, made by defendant, the court rendered judgment in favor of the plaintiff.

The defendant now appeals to this court and asks for a reversal of the judgment, because the verdict is contrary to the evidence, and because the court erred in giving and refusing instructions, and in the admission of evidence.

It is first assigned for error that the court refused to dismiss the suit below because no cost bond was filed, and in permitting the next friend to prosecute as a poor person. A bond was filed by the next friend, but it was held not sufficient

by the court; thereupon the next friend entered a cross-motion
for leave to prosecute on behalf of the minor as a poor
person, and upon proper proof made of his poverty and ina-
bility to give bond, the court allowed the cross-motion.    In
this there was no error.    Our statute is broad enough to
include all classes of resident suitors in its benefits.    It would
be a very harsh and most unreasonable construction to give to
the statute to say that adult poor persons might prosecute for
injuries done without bond, but that minors, compelled to
come into court by their next friend, must find securities.    A
minor himself could give no bond which would be binding on
him, except at his own pleasure, and if he could not procure
bondmen, then he could not be heard in a court of justice.

The statute does not, in terms, limit the right to prosecute
as a poor person to adults, and we know of no reason why
we should interpolate that word into the statute.    We might,
with the same propriety, limit it to males or females.

Granting or refusing the privilege to prosecute as a poor
person rests in the discretion of the court, by the express
terms of the statute, and is not subject to review except
where the discretion has been abused.    Rockford v. Russell,
9 Ill. App. 229.    There is nothing in the record to show that
the court abused its discretion, but, on the contrary, sufficient
grounds were shown to justify the action of the court.

Appellee was about eighteen years old when the accident
occurred.    He was engaged in hauling grain for Anderson, his
employer, to the elevator at Rochelle.    He had just unloaded
a load of grain, and started to return home about the time the
east-bound train was due.    He was driving a two-horse wagon,
and he swears that he was approaching the track in a slow
"jog" trot, and that he went slower as he approached the
track; that he was standing up in his wagon; that he looked
both ways for trains, three or four times, just within a few
rods before he reached the track, and that he looked again
when within less than sixty feet of the track for cars but saw
none; that he also listened for cars while he was looking;
that though both watching and listening as he approached the
track, he neither heard nor saw any train, nor heard any bell

or whistle, until he had passed the line of the hedge fence (which was only about thirty-five feet from the rails), and that he then saw and heard the train for the first time, when it was but a rod or so from him and his team—within a few feet of the track. He also swears that his hearing and sight were good. As soon as the horses saw the train they became unmanageable, ran across the track in front of the locomotive, and the collision occurred, resulting in the loss of an arm to appellee. Aside from the plaintiff's own testimony, a great many other witnesses were examined on both sides touching the question of negligence, or want of negligence, of both appellee and appellant. There was no dispute on the part of appellant as to the obstructions along the north line of its track up to the line of Bartholomew street. The proof tends strongly to prove that this hedge fence, some fifteen feet high, grew either on the right of way or on the line of the right of way of appellant, and that it came up to within six or eight feet of the sidewalk along the west line of Bartholomew street, and less than fifty feet from the track. This hedge was in full leaf, close and compact, and seems to have been of itself a sufficient obstruction to prevent the seeing of a train of cars through it, except upon a very close examination. The track of defendant's road was also some three feet below the level of the ground on which the hedge fence grew. A large number of witnesses testified on behalf of the plaintiff that the train was running from twelve to fifteen miles an hour at the time of the collision, and also that they heard no whistle or bell until just at the time of the collision.

For the defense, many witnesses testified that they heard the bell ring and heard the whistle sound for a considerable distance before the crossing was reached. The testimony on behalf of the defendant also tended to show that the rate of speed the train was going when the accident occurred was not to exceed seven to nine miles an hour. Several witnesses also testified on behalf of the defendant that the obstructions were not of such a character as to prevent seeing the approaching train from the west if plaintiff had been looking, and a number of photographic views were introduced for the same purpose,

but the photographs were taken in January, when there was no foliage on the trees or the hedge fence.	The same conflict of testimony applied to the rate of speed and the care used by the plaintiff in approaching the crossing.

All these questions involved only matters of fact, for the jury.	As is usual in such cases, the testimony was very conflicting.	The court and jury who tried the case saw and heard the witnesses, and occupied a position very much better than ours to weigh the evidence and decide where the preponderance lay.	It is the settled rule of the Supreme and of this court not to set aside verdicts of juries under the charge that they are against the weight of the evidence, unless we can clearly see that the evidence does not support the verdict, or that the jury has been governed by prejudice or passion, or that injustice or wrong must result from the verdict.	O., B. & Q. R. R. Co. v. Lee, 87 Ill. 457.	If the plaintiff's witnesses were believed by the jury, then there is ample evidence to support the verdict.

If the plaintiff was exercising ordinary care in approaching the crossing (and the verdict necessarily finds that he was), then the verdict may be supported on any one of the alleged acts of negligence set out in the declaration as to, first, the failure to ring a bell or sound a whistle; second, the high and dangerous rate of speed of the train; third, the failure to keep a flagman at the crossing; fourth, the running at a higher rate of speed than allowed through the city limits; and fifth, allowing the obstructions so near their track at a public crossing as to hide approaching trains from view.	If the proof showed negligence on the part of defendant under any one of these charges, resulting in the injury to the plaintiff when he was using reasonable care, then the defendant would be liable and the verdict supported, no matter how much care defendant may have exercised in other regards.	The company would not be liable for obstructions not on their right of way and over which they had no control, but where such obstructions, in fact, hide the approach to street-crossings in a city or town, where people are liable to cross at any moment, then reasonable prudence and care require that the crossing must be

approached with a higher degree of care than if the view were open.   In the case of I. & St. L. R. R. Co. v. Stables, 62 Ill. 313, the Supreme Court say that "a mere compliance with the statutory requirements does not authorize the omission of other reasonable and necessary precautions."

Appellant assigns for error the action of the court in admitting proof to show that no flagman was stationed at the crossing in question.   There was no error in this.   Whether a flagman was there was a part of the *res gestæ*.   But it was also competent, under the issue joined, charging negligence in the omission to place a flagman at that crossing.   As a matter of law, we can not say that it was the duty of defendant to place a flagman at the crossing, but it was proper to go to the jury as a fact in the case, in order to enable them to determine whether, under all the circumstances, the defendant had used all reasonable and proper means under its control, to prevent accidents occurring at the street-crossing.   If, from the nature of the crossing, the rate of speed defendant desired to run its trains, the hidden condition of its track and trains, and the amount of travel of the street, made it reasonably necessary to place a flagman at the crossing to prevent accidents, then it was as much the duty of defendant to have a flagman there as it would be to have a brakeman at his post to stop the train to prevent a collision.   The failure of the city to require a flagman to be placed at the crossing would be no excuse for the defendant not doing it without compulsion, if reasonable care for the safety of the lives of people required it to be done.

Appellant assigns for error that the court erred in giving all of plaintiff's instructions from one to eleven, inclusive.   Thirteen instructions in all were given for plaintiff and fifteen given for appellant, and five refused for appellant.   The objections appellant makes to all of the instructions given for appellee are exceedingly technical and hypercritical.   To notice all the objections made would prolong this opinion to an unreasonable length, and serve no useful purpose.   We have carefully examined all the objections urged against the instructions, and are unable to find any substantial objections

to any of them. Even if trifling and unimportant errors can be found in plaintiff's instructions, they were most abundantly cured and obviated by the elaborate and skillfully drawn instructions given for the defense.

We desire again to enter our protest against the practice of deluging the jury with an unreasonable and unnecessary amount of instructions. Every principle of law involved in this case could have been clearly and correctly stated to the jury in three or four instructions at the outside for each party. A rule of law once clearly stated to the jury is enough, and it ought not to be repeated. Courts have ample power to protect themselves against this abuse, and they should not hesitate to use it. The fewer and briefer the instructions the less liability there is for error to intervene. The court should see to it that all and only such legal propositions as are applicable to the case in hand should be given to the jury, and if these propositions can be couched in two or three short instructions, then there is no necessity of confusing the jury and incumbering the record with a dozen or twenty artfully written instructions intended by the party submitting them for an argument from the court.

Perceiving no substantial error in the record, the judgment is affirmed.

*Judgment affirmed.*