## St. Louis National Stock Yards v. Agnes Brennan, Administratrix.

1. RIGHT OF WAY—*when person injured upon, not a trespasser.* A person injured while crossing railroad tracks is not a trespasser where apparently there was a highway across such tracks, and it appeared that such apparent highway had for a long period been daily used by a vast number of people without objection upon the part of the railroad company.

2. CROSSING RAILROAD TRACKS—*duty of railroad company to persons.* A railroad company is bound to the exercise of the degree of care commensurate with the danger where large numbers of persons have been using an apparent highway over its tracks without objection from it.

Action on the case for death caused by alleged wrongful act. Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1905. Affirmed. Opinion filed March 22, 1906.

SCHAEFER & FARMER, for appellant.

PAUL D. IROSE, for appellee; D. E. KEEFE, of counsel.

MR. JUSTICE HIGBEE delivered the opinion of the court.
Appellee, as administratrix of the estate of her husband,

Thomas J. Brennan, brought suit under the statute for the benefit of herself as widow and their children as next of kin, to recover damages for the death of her husband, who was run over and killed by a railroad car, set in motion by appellant's servants, who were engaged in switching cars in its stock yards.

The facts in the case, as they appear from the proofs, are substantially as follows: For many years appellant has owned and operated general stock yards of large extent just north of East St. Louis, and separated therefrom on the south by St. Clair avenue, a street extending east and west. A very large business was done by appellant, and a number of large packing houses were established at the stock yards. The yards were intersected by roads and streets, and traversed by railroad tracks. For some years past appellant has had notices posted up on the different roadways, streets and passages stating that the same were private property, and requesting people to keep out of them. The railroad tracks were used to switch cars from the various railroads doing business with the stock yards and packing houses, and for such purpose appellant employed switching crews and operated its own engines. At the east end of the stock yards is the National Hotel, and in front thereof a wide opening on St. Clair avenue. From this space an avenue leads north, crossing at a distance of some 300 feet from the hotel another street or roadway which runs west parallel to St. Clair avenue. The street mentioned as running west appears to have no name, but, for convenience, we will refer to it as street A. Some 800 feet west of the hotel is a street running north and south known as Packers' avenue. On Packers' avenue, just north of street A, are a number of packing houses, among them that of Swift & Company, which is located on the west of the avenue, next to street A. Along the north side of street A, near its west end, running east and west and crossing Packers' avenue, is a viaduct, about twenty feet in height, on the top of which is a chute for driving cattle from the stock yards to the plant of Swift & Company.

Along the east side of Packers' avenue, parallel therewith and crossing street A, are located three railroad tracks. The west track was known as the lead track, the second or middle track as the repair track, and the east track as the Nelson Morris lead track. A short distance south of street A is a switch running from the east track in a southeasterly direction to the south side of the Nelson Morris plant, and a short distance north of the said street another switch leads from the east track to the north side of the Nelson Morris plant. The railroad tracks at the place where they cross street A are planked in to make a crossing, the north end of the planking being some eighteen feet south of the viaduct. Street A was laid out shortly after the stock yards were constructed, and has been used by people having business with the stock yards and packing houses and the public generally for more than twenty years. From 1,000 to 3,000 people pass over the street daily, the heaviest travel being from seven to eight o'clock in the morning, when the employees of Swift & Company are going to work, and five to six o'clock in the afternoon, when they are returning. It is said in appellant's brief: "A person living in East St. Louis and desiring to go to Swift & Company or Armour & Company or to any of the packing houses, situated north on Packers' avenue, can walk westerly on St. Clair avenue until he reached Packers' avenue, and then go north on Packers' avenue to the packing houses, or he could enter the stock yards premises at the open space in front of the National Hotel building, and then go west on this roadway and cross the tracks lying east of Packers' avenue until he reached Packers' avenue, and then go north on Packers' avenue to the packing houses. Some also would go west on St. Clair avenue until they would reach the westerly side of Nelson Morris' packing house, which fronts on St. Clair avenue, and then go between the tracks in a northerly direction until they would reach Packers' avenue, and then go north on Packers' avenue to the different packing houses."

On the morning of August 4, 1903, the servants of ap-

pellant were engaged in switching north of the crossing of street A, and sometime before 8 o'clock placed a box car, as appellee claims, on the middle track just north of the crossing under the cattle chute, or, as appellant claims, on the east or Nelson Morris' lead track at a point five or six feet north of the chute. Brennan, the deceased, lived east of the crossing and was employed by Swift & Company as a beef lugger. In going to his work about 7:45 a. m. on the day he was injured, he went west along St. Clair avenue to the west side of the Nelson Morris packing plant, and then walked in a pathway between the Nelson Morris switching tracks in a northwesterly direction towards the crossing and the plant of Swift & Company. Appellee claims that deceased proceeded directly to the railroad crossing in street A; that as he reached the middle track, appellant's switching crew "kicked" two cars against the standing car with such force that it started forward, knocked Brennan down and ran over him. On the other hand appellant claims that Brennan did not attempt to cross the tracks at the crossing, but at a point north of the viaduct, and at the place he was injured there was no roadway. There was no flagman or switchman at the crossing and no brakeman or other person in charge of the cars that were "kicked" against the standing car. Brennan died from the effects of his wounds about an hour after he was injured.

The declaration charged negligence on the part of appellant in failing to give the proper signals when the cars approached the crossing and in pushing and "kicking" cars against the standing car, at a high and dangerous rate of speed, unaccompanied by any brakeman and disconnected from any engine and without any way of controlling their speed. The four counts each charged that Brennan, at the time of the injury, was in the exercise of due or ordinary care for his own safety. One count charged that the place where Brennan was injured was "a public highway or passageway open to the public." Another "a certain highway and passageway open to the public," and the other two "a public highway."

This case was tried twice in the lower court and on both occasions a verdict was returned in favor of appellee. Upon the second trial the verdict was for the sum of $7,920, but a *remittitur* of $1,920 was given and judgment entered for $6,000.

Appellant, while calling attention of the court to a number of alleged errors, states that they are trivial when compared to the error of the court in rendering judgment on the verdict, when it clearly appears from the record that the roadway in question was not proved to be a public highway as alleged in the declaration, when there is absolutely no proof that the deceased was in the exercise of due care, and when the great preponderance of the evidence proves he was struck at a point five feet north of the viaduct at a place where there was no pathway or crossing. We will therefore consider the three questions raised by appellant in the above statement and for convenience will take them up in inverse order.

As before stated, appellant contends that Brennan was struck at a point five feet north of the viaduct, while appellee contends that he was struck on the crossing in street A south of the viaduct. Four witnesses testified on behalf of appellee that Brennan, at the time he was struck, was walking about the middle of the planked roadway crossing. One witness, who was an employee of appellant, testified on behalf of appellant that the car was standing at a point about five feet north of the viaduct and at a place where there was no pathway and no crossing of any kind, and that Mr. Brennan stepped in front of it immediately before it was struck by the two cars that were kicked down from the north. Three witnesses for appellant, not eye-witnesses to the injury, also swore to facts tending to show that Brennan was struck north of the viaduct.

The claim of appellee that Brennan was struck while on the planked street crossing, was supported by the testimony of four out of five of the eye-witnesses, and it appears to us from an examination of the record that the evidence was such as fully to warrant the jury in so finding.

The question whether Brennan was in the exercise of due care at the time he was struck depends very largely upon whether he had a right to go over the crossing or was a mere trespasser. Even though the street in question may not have been technically considered a public highway, within the meaning of the statute, yet it was a road or street in general use by the public, with the permission or consent of appellant, which appears to have recognized and treated it as a street. It had been opened by appellant soon after the stock yards were established, and had been used continually by those having business with appellant or the packing houses, and the public generally, for more than twenty years. Planks had been placed between the rails in the street to make a crossing for vehicles. Some attempt was made to watch the crossing. Richard Gardner, a witness for appellant, testified that he was at the time a switchman in the yards, working at the Nelson Morris plant coupling cars and switching; that he was watching the crossing all the time he worked there; that he could watch the crossing when 100 feet north of there, and that it was his duty to see that they did not hit any trains or anybody; that he did not see Brennan when he was struck, and was at the time some 100 feet north of the crossing engaged in switching cars. The roadway in question was used daily by from 1,000 to 3,000 people. Few public highways outside of the streets of cities are daily used by so many people. Under the circumstances appellant must be charged with notice of the extensive public use of the street and crossing and to have consented to such use, and especially must consent to use the street, to the extent of an implied invitation, be presumed to have been given by appellant to the employees of the different packing houses in the stock yards, who made daily use of it in such large numbers. Brennan was therefore not a trespasser at the time and place he was injured, and the extent to which the crossing was used, with the consent of appellant, made it the duty of appellant's servants in charge of trains of cars to use care in approaching the crossing commensurate with the known or reasonably apprehended danger.

In C. & A. R. R. Co. v. Dillon, 123 Ill. 570, the appellee Dillon received injuries while attempting to cross the railroad tracks of the National Stock Yards (appellant here) at their intersection with Avenue F in said yards. In the course of that opinion it is said: "It is finally urged with great persistence that the avenue in question is not within the meaning of our statute a public highway, and that as the action is based exclusively on the statute, the failure to ring a bell or sound the whistle was violative of no duty it imposes, and hence no cause of action is shown. We do not concur in this view. It is to be observed, in the first place, this is not a statutory action to recover the penalty which the statute prescribes for a failure to give such a signal. If it were, quite a different question would be presented. The present is a common law action brought for the failure to perform a duty imposed by law. Under the facts disclosed by the record we do not think it essential to the maintenance of the action that this duty should necessarily arise under the statute, notwithstanding the pleader may possibly have so regarded it in framing the declaration. Without regard to the statute, it is the duty of those having charge of trains to give notice of their approach at all points of known or reasonably apprehended danger." Whether appellant used care commensurate with the known or reasonably apprehended danger of the place was a question which was properly submitted to the jury.

In C. & A. R. R. Co. v. Sanders, 154 Ill. 531, it is said: "The question of negligence will depend upon the special circumstances of each case, and is a matter for the determination of the jury."

But appellant contends that its motion to take the case from the jury should have been sustained, for the reason that there is a variance between the declaration and the proof; that the allegation in the declaration is that the roadway in question was a public highway which the proofs fail to sustain. It is true that two of the counts of the declaration charged that the place where the injury occurred was a public highway. One of the other counts, however,

refers to the place as a public highway or passageway open
to the public, and another as a certain highway or passage-
way open to the public. The uncontradicted proof is that
the street in question is at least "a passageway open to the
public," and the counts making this charge were sufficient,
under the proofs, to sustain the judgment.

We find no material error in the record, and the judg-
ment of the court below will accordingly be affirmed.

*Affirmed.*