(No. 13916.—Judgment affirmed.)

JAMES ISAAC MOORE, Defendant in Error, *vs.* THE WABASH RAILROAD COMPANY, Plaintiff in Error.

*Opinion filed October 22, 1921—Rehearing denied Dec. 8, 1921.*

1. NEGLIGENCE—*when negligence of railroad company is a question for jury—review.* In an action against a railroad company for an injury to an employee it is a question for the jury whether the defendant was guilty of the negligence charged, where the evidence tends to support the material allegations of the declaration both as to due care by the plaintiff and as to the negligence of the defendant's agent, and all questions of fact are conclusively settled by the verdict of the jury, the judgment of the trial court and its affirmance by the Appellate Court.

2. SAME—*when railroad company is liable for injury to freight conductor from explosion.* Where the conductor of a freight train is injured by an explosion of dynamite caps which another employee had found upon the tracks and placed on the platform of the caboose, the facts that such employee knew that the substance was

dynamite, and that it was his duty as patrolman of the company's yards to look for dangerous substances and take them to the headquarters of the chief detective of the company, are sufficient to charge the company with liability for the injury to the conductor.

3. SAME—*when the master is liable for negligence of servant in handling dangerous agency.* The duty of a servant entrusted with a dangerous agency is to carefully guard and control it, and a failure in this respect, with resultant injury to another person, is not a departure from his master's service but is a negligent discharge of that service for which the master is liable.

4. SAME—*when employee does not cease to be engaged in interstate commerce.* In determining whether or not an employee is engaged in interstate commerce at a particular time the character of the work he is employed to do is to be considered, and from the mere fact that there is a lull in this employment or a temporary cessation of the actual work it cannot be said that the employee is not engaged in interstate commerce during such rest or interruption of actual work.

5. SAME—*burden is on defendant railroad company to prove assumed risk—instruction.* In an action under the Federal Employers' Liability act the burden of proof as to the question of assumed risk is on the defendant railroad company, and if the defendant considers it necessary to have an instruction given to the jury defining assumed risk it should present one to the court, and it can not complain because the court does not prepare and give one of its own motion.

6. APPEALS AND ERRORS—*when it is not material that Appellate Court's judgment of affirmance is based on wrong theory.* If the action of the Appellate Court in affirming a judgment of the trial court in an action for negligence is right, the fact that it has based its affirmance upon a wrong theory is not ground for reversal in the Supreme Court.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

ALLEN & CONVERSE, (N. S. BROWN, of counsel,) for plaintiff in error.

T. J. CONDON, and ROBERT H. PATTON, for defendant in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

James Isaac Moore, the defendant in error, recovered a judgment in the sum of $10,000 for personal injuries against the Wabash Railroad Company, plaintiff in error, in the circuit court of Sangamon county. On appeal to the Appellate Court for the Third District the judgment was affirmed, and the record was brought to this court for review by petition for writ of *certiorari.*

The declaration alleges, in substance, that on August 15, 1917, while the plaintiff, a freight conductor in the employ of the defendant, was in a caboose assigned to him by defendant for use in interstate commerce and engaged in said caboose in preparing records and files designated for train No. 95, which was to be taken by him from Decatur to Springfield, Illinois, and was to contain cars to be moved in interstate commerce to points outside of the State of Illinois, and while he was awaiting orders to move said train and while he was then and there in the exercise of all due care and caution for his safety, the defendant, by its agent, R. A. Thornell, negligently brought upon the platform of the caboose certain high explosives and dangerous dynamite caps which he had found along the tracks; that said caps were loaded with fulminate of mercury, a dangerous explosive material, the character of which was unknown to plaintiff and would not have been known to him by the use of reasonable and ordinary care and which was known or would have been known to defendant by such care; that the caps were left upon the caboose platform by Thornell, near the plaintiff, without warning of their dangerous character, and while there they in some unknown manner exploded and injured plaintiff.

Defendant in error proved the following facts: On the morning of the accident, at about 4:30 o'clock, he left Springfield as conductor of a freight train containing interstate commerce cars and arrived at Decatur at about 7:00 A. M. and was on duty almost continuously until the ac-

cident, which happened about 10:00 A. M.   Shortly after
arriving in Decatur he was informed by the assistant yard-
master, Steve O'Connell, that at 11:30 A. M. he would get
train No. 95 out of Decatur for Springfield after the ar-
rival of train No. 93 from Chicago, for which train No. 95
would wait and out of which train No. 95 would get some
cars for the trip back to Springfield.   It was proven that
there was a custom in the yards at Decatur that freight con-
ductors who ran their trains from Springfield to Decatur
and return would be called by train callers an hour or an
hour and a half before their trains were to return to Spring-
field and informed what trains they would return with and
the cars that they would carry in their trains.   It was also
proven that defendant in error was called two-thirds of the
time by the yardmaster and given the information as to
the train and cars he would return with, as he was on the
day of the accident, and when so called the special caller
was not depended on to make the call and did not make
it.   In pursuance of the information given him by the
yardmaster defendant in error took the numbers of sev-
eral cars that were then upon the side-track and were also
to be a part of his train on his return trip and entered
them upon his train-book in the caboose assigned to him
for his return trip.   There were several cars of this num-
ber that were destined to points outside of the State.   The
caboose to be used by him was one that had been used by
him for several years on his trips from Springfield and
return.   He had put out signals on the rear of the caboose,
had put ice in the cooler and had otherwise prepared for
his return trip, and had been continuously on duty from
the time that he had gotten said information from the as-
sistant yardmaster until the accident occurred.   He had just
entered the number of the train on which he was to re-
turn and his name and the name of his brakeman on the
report to be filled out by him as conductor and was other-
wise preparing the necessary reports for his return trip in

his caboose, when Thornell, a patrolman in the yards of plaintiff in error, called him out onto the steps of the caboose and asked him if he knew what it was that he (Thornell) had found. Thornell had found a small box of dynamite caps near to or on the tracks of plaintiff in error in a broken condition, caused by being run over by the flange of a passing car wheel. The caps were scattered upon the caboose platform by the patrolman, and while he and defendant in error were examining them, some of the powder or fulminate of mercury in the caps spilled onto the platform. The patrolman left the caps on the platform, informing Moore that he was going to the place where he had found them and look for others. While Moore was looking at the caps, and just after Thornell left him, the brakeman who worked with Moore came out of the caboose, and seeing Moore with one of the caps in his hand and others lying on the platform asked him what he was doing and kneeled down behind him, and just as he was reaching over Moore's shoulder for one of the caps all of them exploded in some manner not definitely shown by the record. Moore was very seriously injured, his right eyeball being bursted and his left so injured that he cannot see or discern objects by his sight and was left a nervous wreck as a result of the injury.

It is insisted by plaintiff in error that the peremptory instruction offered at the close of all of the evidence in the case should have been given and that there is absolutely no liability proved against it in this case. The first proposition upon which this claim is based is that the negligence charged in the declaration was not proven as alleged. The substance of the charge in the declaration, though stated somewhat differently in the several counts, is, that the defendant, by its employee, Thornell, negligently brought onto and placed upon the platform of the caboose the package containing the explosive caps in question and shook some of their contents onto the platform, and knew, or by the

exercise of reasonable care would have known, that the package contained dangerous explosive material, and negligently failed to warn the defendant in error of their dangerous character. Each count also alleged that defendant in error did not know, and by the exercise of reasonable care would not have known, the dangerous character of the contents of the package. The proof does show that the defendant in error did not know, and by the exercise of reasonable care would not have known, of the dangerous character and dangerous contents of the package, and the plaintiff in error does not seriously question this fact. We also think that it was a question for the jury, under the evidence, whether or not the defendant in error was guilty of the negligence charged, and this court is concluded by the findings of the Appellate Court, which affirmed the circuit court's judgment.

The proof shows very clearly and conclusively that fulminate of mercury is one of the most sensitive and dangerous explosives known to science and one that can be readily exploded by friction, by stepping upon it, or by handling it roughly, or by concussion, or by fire. Each of the caps contained about two grains of the explosive. We also think that the evidence tended strongly to show that Thornell, the special agent or policeman of the plaintiff in error, knew, or by the exercise of ordinary care would have known, of the dangerous character of the contents of the package that he found and carried to the platform of the caboose occupied by defendant in error, notwithstanding the fact that in his testimony he made statements that might lead to a different conclusion. According to a written statement made by him shortly before the trial he had reasonable ground for believing that the package contained some dangerous explosive and was placed upon the tracks of the plaintiff in error by some unknown miscreant with the intention of blowing up or doing violence to one of its trains or its property. In this

statement, made June 18, 1919, and which was signed by him, he states that on the day of the accident, at 10:45 A. M., while acting as patrolman for the plaintiff in error, under G. W. Barham, special agent for the company in Decatur, he found on track 11 of plaintiff in error a box of dynamite caps which had been placed on the rail, apparently by someone to accomplish ill-results, as there was a board placed by the side of the dynamite caps to hold them in their position as found. He further stated that the caps had been removed from the rails by a car or cars running over the rails and over said board, the contents of the box being damaged by the flanges of the wheels, "thus putting them into a dangerous condition to be handled, owing to their high explosive quality." He also stated that after emptying part of the contents of the caps he said to Moore that he would return to track 11 and ascertain if any more of them could be found, and that Moore said to him, "You had better take all of these with you, and if you find any more like them take them down to the chief detective's office at the depot and see if you can find out by anyone what they are." He replied to Moore that only a minute would be consumed in going back to track 11. In doing so he found another full box of dynamite caps in good shape and was taking the same to Moore's caboose, and when about eighty feet therefrom the first box he delivered there in bad condition exploded. He also stated that he was well aware of the fact when he first found the damaged box that they were dynamite caps but did not feel that they were so highly explosive or he would not have taken them there, where life or limb would be endangered.

It appears in evidence that one of the special duties of Thornell, as patrolman for plaintiff in error, was to look after plaintiff in error's railroad cars and tracks and find out if any cars had been broken into and any of their contents stolen, and to look out for dangerous substances of the character that he found on that day or that he might

find on plaintiff in error's tracks or premises, and when
he found the same to take them to the headquarters of the
chief detective of plaintiff in error, where they might be
examined and their character ascertained.  On the occasion
in question he was clearly in the line of his employment
when he found the dangerous package in question, and it
was his duty to take it to the headquarters of plaintiff in
error's chief detective and not expose other persons or em-
ployees of plaintiff in error to danger.  The plaintiff in er-
ror was liable for any negligent performance of this duty
which would subject unsuspecting parties to the dangers of
a probable explosion.  That he did not actually know that
an explosion would take place would not relieve the plain-
tiff in error of liability.  The fact that he knew that they
were dynamite caps and had reason to suspect that they
were placed on the track in question to cause damage by
explosion is sufficient to charge plaintiff in error with lia-
bility.  The moment he took possession and control of this
dangerous explosive in the line of his duty and under in-
structions of plaintiff in error, it was bound, through him,
to use the highest degree of care in its control.  (18 R. C. L.
789; *Mattson* v. *Minnesota and North Wisconsin Railroad
Co.* 95 Minn. 477.)  His previous instructions by his em-
ployer with reference to suspicious packages found by him
made him custodian of this package for delivery to a head-
quarters supposed to be competent to ascertain if it was
dangerous and to so dispose of it as to render it harmless
to unsuspecting persons that might come in contact with it.
The duty of a servant intrusted with a dangerous agency
is carefully to guard and control it, and a failure in this
respect is not a departure from his master's service but a
negligent discharge of that service.  (*Barmore* v. *Vicks-
burg, Shreveport and Pacific Railway Co.* 70 L. R. A. 627.)
It is said in Thompson on Negligence (vol. 1, sec. 523):
"If, while so charged with this duty, the servant negligently
abandons the custody of it, [a dangerous agency,] so that

a third person is injured in consequence of this negligence, the master will be liable; and it will make no difference at all with his liability whether in so abandoning the duty the servant did so for the purpose of effecting some purpose of his own or in furtherance of the business of his master."

Defendant in error was engaged in interstate commerce and had been from the moment he began preparing for his return trip by checking up the cars in the yards that had been collected for his train, some of which were destined to points out of the State, and by preparing his caboose for the return trip, which had been switched onto a side-track for his use and in position for switching the other cars to it for the return trip. There was no departure on his part from his work in interstate commerce by turning his attention to Thornell when he was accosted by him in regard to the dynamite caps. He never left his caboose for a moment, and the few seconds during which they were talking and examining these caps constituted no departure from his employment, not any more than would a conversation by a passenger with him in his caboose on his return trip about matters not concerning his business as railroad conductor, during a lull or a run between stations and when his duties were not then and there demanding his attention. In determining whether or not an employee is engaged in interstate commerce the character of the work he is employed to do for his employer is to be considered, and from the mere fact that there is a lull in this employment or a cessation of the actual work because of the fact that the job does not require continual work it cannot be said that he is not engaged in interstate commerce at the particular moment of such rest or interruption of actual work. The fact is that the entire work engaged in on that day by defendant in error for his employer pertained to interstate commerce or rendered him an employee in interstate commerce, whether the same was in his trip from Springfield to Decatur or in the preparatory work for his

return trip.  In fact, all questions of fact are conclusively settled for this court by the verdict of the jury and the judgment of the trial court and its affirmance by the Appellate Court, as there was evidence tending to support all of the material allegations of the declaration.  *Devine* v. *Chicago, Rock Island and Pacific Railway Co.* 266 Ill. 248.

Defendant in error tried his case on the theory of his declaration, and he proved all of the material allegations thereof.  The court properly instructed the jury upon the actual allegations in the declaration and not upon any theory of the duties of the plaintiff in error to furnish a safe place in which to work.  The instructions given by the court correctly stated propositions of law pertaining to the case, and the refused instructions were either erroneous or were mere repetitions of those already given by the court.  There was really no serious question of assumed risk in the case, and in all such cases the rule of the Federal court is that the burden of proof is on the defendant as to the question of assumed risk.  If the plaintiff in error considered it necessary to the proper protection of its interests to have an instruction given to the jury defining assumed risk it was its duty to present one to the court, and it cannot complain because the court did not of its own motion draw and read one to the jury.  The mere fact that the Appellate Court considered that a sufficient case was made against plaintiff in error upon the theory that it was its duty to furnish a reasonably safe place in which to work, which theory or charge did not appear in the declaration, is no sufficient ground for reversing the judgment of that court. It has affirmed the judgment, and whether on a correct or on a wrong theory is immaterial.  The effect of its judgment is to sustain the lower court and the jury and to find the same state of facts as found by the circuit court and jury, which finding is conclusive upon this court.

The judgment of the Appellate Court is therefore affirmed.

*Judgment affirmed.*