## Edward F. McMullen, by Leonard H. McMullen, Plaintiff in Error, v. Illinois Central Railroad Company, Defendant in Error.

### Gen. No. 29,167.

1. RAILROADS—*duty to maintain flagman at private crossing as jury question in personal injuries action.* In an action against a railroad company for injuries received by the driver of a truck in a collision with an engine at a crossing maintained by defendant for the convenience of persons going to and furnishing supplies to its dining cars standing on tracks near the crossing, where the evidence showed that because of the large amount of traffic and obstruction of the view the crossing was a dangerous one, it was for the jury to say whether ordinary and reasonable care on defendant's part required it to maintain a flagman at that point though no statute or ordinance required it to do so and the giving of a peremptory instruction for defendant on that question together with an instruction which, in effect, made a showing of negligence in the operation of the engine necessary to recovery by plaintiff, constituted prejudicial error.

2. RAILROADS—*duty of railroad to maintain flagman at private crossing.* The fact that a railroad crossing is in a sense private though much used by persons and vehicles and not a public crossing used by the public generally is immaterial upon the question of the company's duty to maintain a flagman there.

3. RAILROADS—*duty of care by railroad towards permissive users of private crossing.* A railroad company which maintained a crossing for the use of persons and vehicles furnishing its dining and sleeping cars with supplies was required to exercise reasonable care for the safety of all persons using the crossing by its express or implied invitation.

4. RAILROADS—*when engine engaged in interstate commerce.* An engine which was being backed from the roundhouse to couple to a train in preparation for its daily trip from Chicago to Rockford, Illinois, carrying interstate express matter, was at the time engaged in interstate commerce.

5. WORKMEN'S COMPENSATION—*act as precluding action for injuries to third person subject thereto.* Where the engine which collided with the truck which plaintiff was driving was at the time engaged in interstate commerce, an action for negligence could be maintained against the railroad company though plaintiff and his employer were under the Illinois Workmen's Compensation Act.

McMullen v. Illinois Central R. Co., 234 Ill. App. 416.

Error by plaintiff to the Superior Court of Cook county; the Hon. Jacob H. Hopkins, Judge, presiding.  Heard in the second division of this court for the first district at the March term, 1924.  Reversed and remanded.  Opinion filed October 7, 1924.

James C. McShane, for plaintiff in error.

Vernon W. Foster, for defendant in error; J. G. Drennan and W. S. Horton, of counsel.

Mr. Justice Gridley delivered the opinion of the court.

By this writ of error plaintiff seeks to reverse a judgment for costs rendered against him by the superior court of Cook county upon the verdict of a jury, finding defendant not guilty, in an action for damages for personal injuries.  The reversal is asked solely upon the ground that the court committed reversible error in giving to the jury certain instructions at defendant's request.

While plaintiff, about eighteen years of age, was driving a motor truck of his employer, Magner Winslow Company, westward across defendant's tracks and over a private crossing, about opposite 15th street, in the City of Chicago, on February 13, 1922, in the daytime, one of defendant's engines, backing in a northerly direction, collided with the truck, and plaintiff's left leg and foot were so severely injured as to require amputation of the foot and a portion of the leg.  No flagman was or had been stationed by defendant at the crossing, and the evidence did not disclose that any statute or ordinance required one. Plaintiff's declaration consisted of two counts.  The first was predicated solely upon defendant's alleged negligence in failing to maintain a flagman at the crossing; the second solely upon the alleged negligence of the crew operating the engine.  Defendant's plea was the general issue.

At the close of all the evidence the court, at defend-

ant's request and over plaintiff's objection, instructed the jury that "there is no evidence in this case tending to support the allegations of the first count of plaintiff's declaration, and in arriving at your verdict you will have no occasion to consider the first count." And thereupon the case, under the second count and the evidence introduced by the respective parties, was argued by counsel to the jury. At the conclusion of the arguments the court gave to the jury twenty-four written instructions—eight offered by plaintiff and sixteen by defendant. Among those offered by plaintiff, and given, was instruction No. 8 to the effect that "the Illinois Workmen's Compensation Act has no application to this case." Among those offered by defendant, and given over plaintiff's objection, was No. 14, as follows:

"The court instructs you that such evidence as has been admitted on the question of whether a flagman was stationed at the driveway in question, has been admitted by the court not as tending to show any negligence on the part of the defendant in not maintaining a flagman at that point, but solely as bearing on the question of the alleged negligence on the part of defendant *in running its engine*. You are further instructed that there was no duty imposed on the company by law to maintain a flagman at the driveway in question, and a failure to maintain or have a flagman there was not, of itself, negligence, and you should not consider the evidence as to whether a flagman was maintained or stationed there as tending, of itself, to establish negligence."

The main contention of plaintiff's counsel is that the trial court committed prejudicial error in peremptorily instructing the jury to disregard the first count of plaintiff's declaration, and in giving said instruction No. 14, in that their effect was to completely eliminate any right of recovery on account of defendant's negligence in failing to maintain a flagman at the crossing.

The allegations of the first count were, in substance, that on and long prior to February 13, 1922, the defendant railroad company owned and operated its railroad, which extended from Chicago, Illinois, into and through other States; that a large number of its parallel tracks extended in a northerly and southerly direction at and in the vicinity of a place opposite 15th street in Chicago; that defendant was then and there a common carrier and engaged in commerce between the several States, and its said railroad and parallel tracks were a highway of interstate commerce; that the Michigan Central Railroad Company, at the invitation and with the knowledge and consent of defendant, and as the lessee or tenant of defendant, used and operated its engines and cars over defendant's railroad and parallel tracks; that both railroad companies were accustomed to store their dining cars and the Pullman sleeping cars which they used upon one or more of the easterly of the parallel tracks, while such cars were lying over between their trips and were being provisioned and prepared for their next trips; that defendant had constructed and was maintaining a planked roadway, extending in an easterly and westerly direction across the parallel tracks, for the use of vehicles and persons in crossing the tracks while going to or returning from said dining and sleeping cars and otherwise; that the planked roadway had been and was being regularly used, at defendant's invitation and with its knowledge, by persons and vehicles in crossing the tracks to deliver provisions to said dining cars, and in returning after making such deliveries; that the view of engines or trains approaching the planked roadway on some of the parallel tracks was so obstructed that persons crossing the tracks on the roadway could not readily discover the approach of engines and trains until the same were in close and dangerous proximity to the roadway; that because of this and of the great volume

and character of traffic which moved on the parallel tracks, and which passed over the roadway, it was necessary to the reasonably safe operation of the railroad and tracks and the reasonable safety of persons and vehicles crossing the tracks on the planked roadway, and due care on defendant's part demanded that a flagman should there be maintained to warn persons and vehicles of the near approach of engines or trains; that defendant, not regarding its duty in the premises, long prior to and on said date, "negligently failed and neglected to place and maintain a flagman at said place for said purpose"; that plaintiff's employer, Magner Winslow Company, conducting a provision market in Chicago, was, long prior to said date and at the request of the Michigan Central Railroad Company, accustomed to sell to it provisions for its dining cars and to deliver them by motor vehicles to the cars, while the cars were standing upon one or more of the easterly of the parallel tracks; that on said date plaintiff, while in the discharge of his duty as the employee of said Magner Winslow Company, undertook, at its request and by means of one of its motor vehicles, to deliver to certain dining cars of the Michigan Central Railroad Company, then standing upon one of the easterly of the parallel tracks, certain provisions; that after delivering the same plaintiff lawfully undertook, on his return trip, to drive the motor vehicle westward and upon the planked roadway across the parallel tracks; that while doing so defendant, unknown to plaintiff, was operating one of its engines, and moving it, in interstate commerce, northward upon one of the parallel tracks and towards and about to cross the planked roadway, the view of which moving engine was obstructed; that, in consequence of defendant's failure to maintain a flagman at the planked roadway for the purpose aforesaid, plaintiff, through no want of ordinary care on his part, did not hear or discover the approach of the

McMullen v. Illinois Central R. Co., 234 Ill. App. 416.

engine in time to avoid the collision of the engine with the motor vehicle, whereby plaintiff, although exercising all due care for his own safety at and prior to the time of the collision, was injured, in that his left leg and foot were caught and severely crushed, etc.; and that prior to and at the time of the accident plaintiff and his said employer were working under and subject to the provisions of the Illinois Workmen's Compensation Act. The allegations of the second count, as to the situation of the parallel tracks and roadway and the circumstances preceding the accident, were substantially the same as those of the first count. In the second count, however, the sole charge of negligence was that "defendant, through its servants in charge of the management and operation of said locomotive engine, then and there so negligently, carelessly and improperly drove  *  *  *  and operated it that, as a direct and proximate result thereof, it then and there collided with said motor vehicle, which plaintiff was operating," and while he was exercising at and prior to the time of the collision ordinary care in its operation and for his own safety.

On the trial the testimony, on the questions whether at and immediately before the time of the collision the crew of the engine were guilty of negligence and whether plaintiff was in the exercise of due care for his own safety, was conflicting. But the evidence clearly disclosed that because of the large amount of traffic upon the parallel tracks and upon the roadway, and because of certain obstructions to the view of the operatives of the engine as well as to those using the roadway, the crossing was an exceedingly dangerous one. And, such being the evidence, plaintiff's counsel argues that the giving by the court of the peremptory instruction, together with instruction No. 14, above mentioned, was so highly prejudicial to plaintiff as to require a reversal of the judgment and the remandment of the cause for a new trial, because (1) it was

a question of fact for the jury to decide whether ordinary and reasonable care on defendant's part required it to maintain a flagman at the crossing; (2) it is immaterial whether the crossing was a public or a private one, so far as the question of defendant's duty to maintain a flagman there is concerned, for in either case it owed the same duty, namely, to exercise reasonable care for the safety of those using the crossing; and (3) the jury under the second count could not consider defendant's negligence in failing to maintain a flagman at the crossing.

We are of the opinion that under the allegations of the first count and the facts in evidence it was for the jury to say whether ordinary and reasonable care on defendant's part required it to maintain a flagman at the crossing. To this effect are the rulings of the Supreme Court of the United States. (*Grand Trunk Ry. Co. v. Ives,* 144 U. S. 408, 421; *Panama R. Co. v. Pigott,* 254 U. S. 552, 553.) In the *Ives* case, plaintiff's intestate was killed while driving across defendant's railway at a dangerous crossing in the City of Detroit, and plaintiff recovered a judgment in the U. S. Circuit Court, which was affirmed. Apparently there was no statute or ordinance requiring the maintenance of a flagman at such a crossing, but the trial court instructed the jury to the effect that it was for them to decide whether or not it was defendant's *common-law duty* to maintain a flagman at the crossing, and in approving this instruction the Supreme Court said (p. 421): "As a general rule, it may be said that whether ordinary care or reasonable prudence requires a railroad company to keep a flagman stationed at a crossing that is especially dangerous, is a question of fact for a jury to determine, under all the circumstances of the case, and that the omission to station a flagman at a dangerous crossing may be taken into account as evidence of negligence; although in some cases it has been held that it is a question of law

for the court.'' In volume 20 Negligence Compensation Cases, Annotated, at page 703, in the case note to *Tisdale v. Panhandle & S. F. Ry. Co.* (Tex. Com. App.), 228 S. W. 133, it is said: ''It generally has been held that where a railroad crossing is used extensively by the public, and trains are operated over it at frequent intervals, and there are buildings or other objects that materially obstruct the view of the crossing and of approaching trains—in short, where the crossing is more than ordinarily dangerous or hazardous—it is proper to submit to the jury the issue as to whether due care on the part of the railroad company requires a flagman at the crossing and whether negligence can be predicated upon the failure to provide one.'' (See also, 33 Cyc. 943-4.) After considering some of the decisions of the courts of review of Illinois we think that the rule as stated in the *Ives* case, *supra,* is also the rule in this State. In *Chicago, B. & Q. R. Co. v. Perkins,* 26 Ill. App. 67, plaintiff's intestate, while driving across defendant's tracks on a crossing in the City of Ottawa, was killed by one of defendant's passenger trains. In affirming the judgment the Appellate Court in its opinion said that the crossing was a dangerous one and much used by travelers with teams and by people on foot, and further said (p. 70): ''Under such circumstances, it was for the jury to say what was a safe rate of speed for the train to run, and also whether a proper regard for the safety of individuals and property did not require the appellant to keep a flagman at the crossing for the purpose of warning passers-by of the approach of trains.'' The case was appealed to the Supreme Court (125 Ill. 127), and from its opinion it appears that the railroad company was never notified, under a certain statute mentioned, that a flagman was necessary at the crossing where the accident occurred, and that, because of this fact, the company contended that the trial court had erred in allowing plaintiff to

prove that no flagman had been stationed at the crossing. The court held that the point was not well taken, saying (p. 131): "A railroad company, in the running of its trains, is required to use ordinary care and prudence to guard against injury to the person or property of those who may be traveling upon the public highways and are required to cross its tracks, whether required by the statute or not. The fact that the statute may provide one precaution does not relieve the company from adopting such others as public safety and common prudence may dictate." (See also, *Cleveland, C., C. & St. L. Ry. Co. v. Halbert,* 179 Ill. 196, 200.) In *Chicago & A. R. Co. v. Dillon,* 123 Ill. 570, plaintiff was injured while driving across defendant's tracks upon a *private* crossing at the stockyards at East St. Louis. Upon the third trial he recovered a judgment, and in affirming that judgment our Supreme Court said (p. 579): "Without regard to the statute, it is the duty of those having charge of trains to give notice of their approach at all points of known or reasonably apprehended danger. This is almost universally done by the ringing of a bell or sounding of the whistle, and frequently both. In exceptional cases, where the highest degree of care is deemed advisable, flagging is resorted to. That these duties are enjoined by the common law is not disputed * * *." In *Opp v. Pryor,* 294 Ill. 538, plaintiff, riding at night in an automobile as the guest of the driver thereof in Lafayette, Indiana, and while crossing the tracks of the Wabash Railroad Company, of which Pryor was receiver, was injured in a collision between the automobile and a freight train which was being pushed by an engine in a switching operation. Plaintiff's declaration consisted of three counts. The first charged general negligence in managing the engine and train; the second, absence of any warning of the approach of the train; and the third, that no watchman or gates were provided at the crossing.

She recovered a judgment, but it was reversed and the cause remanded by the Supreme Court for certain errors, not here material, committed by the trial court. In the course of its opinion the Supreme Court said (p. 541): "There was therefore no statutory duty to maintain a watchman or gates at the crossing and neither by custom nor judicial decision has it ever been held that it is the *general* duty of railroad companies to maintain watchmen or gates at public crossings. *There is a common-law duty* to exercise such care and use such precautions as will enable the traveler on the highway, if he exercises ordinary care, to ascertain in the night time the approach of an engine backing cars over a street crossing. *There may be special conditions creating special dangers that might require a watchman or gates at a street crossing, as in the case of such crossing in a populous city in constant use by the public,* but there was neither allegation nor proof of any such condition at this crossing in a residence neighborhood, so that no cause of action was proved under the third count." In the present case we think that the first count sufficiently alleged, and the evidence introduced to sustain it tended to prove, the existence of certain special conditions creating special dangers, which required that the question, whether defendant was negligent in failing to maintain a flagman at the crossing, should have been submitted to the jury; that the trial court, in giving said peremptory instruction, together with instruction No. 14, virtually instructed the jury that, even though they believed that the crossing was an exceedingly dangerous one and that defendant under all the circumstances was negligent in failing to maintain a flagman there and that plaintiff was in the exercise of due care for his own safety, plaintiff could not recover unless they believed that defendant was guilty of negligence, as charged in the second count, in the running or operating of its engine; and that the giv-

ing of said instructions constituted error prejudicial to plaintiff.

Defendant's counsel strenuously argue that because of statements in the opinion in the case of *Chicago & I. R. Co. v. Lane,* 130 Ill. 116, the trial court was fully warranted in giving the instructions mentioned. In that case Lane, a minor, lost his arm as the result of a collision between a team and wagon driven by him and a passenger train of a railroad company at a street crossing in the City of Rochelle. There were serious obstructions to the view of one about to cross the railroad track, and the crossing was a dangerous one. The first count of plaintiff's declaration charged negligence of defendant in allowing said obstructions on its right of way, and also charged that defendant ran its train at a high and dangerous rate of speed, and that it neglected to ring a bell or sound a whistle, as required by statute. The second count alleged the existence of the same obstructions and that, by reason of the dangerous character of the crossing, it was defendant's duty to keep a flagman there, and that it was guilty of negligence in not doing so. Other counts charged negligence in other particulars. Defendant pleaded the general issue. The trial resulted in a verdict and judgment for plaintiff. The judgment was affirmed by the Appellate Court for the second district (30 Ill. App. 437), and also by the Supreme Court on appeal. From the Appellate Court opinion it appears that defendant assigned as error the action of the trial court in admitting proof to show that no flagman was stationed at the crossing, but the court said the evidence was competent because one of plaintiff's counts charged negligence in that particular and issue was joined on the charge. The Appellate Court further said (p. 443): "As a matter of law, we cannot say that it was the duty of defendant to place a flagman at the crossing, but it was proper to go to the jury as a fact in the case, *in order to enable them to*

*determine whether,* under all the circumstances, the defendant had used all reasonable and proper means under its control *to prevent accidents occurring at the street-crossing.* If, from the nature of the crossing, the rate of speed defendant desired to run its trains, the hidden condition of its track and trains, and the amount of travel on the street, made it reasonably necessary to place a flagman at the crossing *to prevent accidents,* then it was as much the duty of defendant to have a flagman there as it would be to have a brakeman at his post to stop the train to prevent a collision." From the Supreme Court opinion (p. 123) it appears that defendant complained of the refusal of the trial court to instruct the jury that the fact that defendant did not have a flagman at the crossing was not evidence of negligence on its part under the issues framed, and that they should entirely disregard the same in passing upon the question of whether or not defendant was guilty of negligence as charged in the declaration. The court, after discussing the evidence and mentioning certain given instructions, said (p. 124): "Although there was no ordinance requiring a flagman to be placed at the crossing, yet we think the fact there was none there was properly allowed to be shown to the jury as one of the existing circumstances attendant upon the alleged injury. *The absence of a flagman was not negligence,* yet such absence, in connection with proof of the condition of things, in respect to population, travel and otherwise, in that particular locality, would shed light upon the question of the care and caution on the part of appellant in running its trains that the safety of the public would reasonably require. The instructions the court gave sufficiently guarded the interests of appellant against any improper inference that might be deduced from the circumstance there was no watchman, and the court very properly declined to tell the jury they should entirely disregard

such circumstance in passing upon the question
whether or not appellant was guilty of the negligence
charged in the declaration.'' It is this portion of the
court's opinion, and particularly the statement—''the
absence of a flagman was not negligence''—that de-
fendant's counsel in the present case rely upon. But
we do not think that the court in the *Lane* case, in
making the statement, intended to hold that a railroad
company could not be guilty of negligence in failing
to maintain a flagman at an especially dangerous cross-
ing, where conditions were such that a flagman was
reasonably necessary to prevent accidents thereat.

And we think that the fact that the crossing in the
present case was in a sense a private crossing (though
much used by persons and vehicles) and not a public
crossing used by the public generally is immaterial,
so far as the question of defendant's duty to maintain
a flagman there is concerned. (*Chicago & A. R. Co.
v. Dillon*, 123 Ill. 570, 579; *Chicago & A. R. Co. v.
Sanders*, 154 Ill. 531, 536; *St. Louis Nat. Stock Yards
v. Brennan*, 126 Ill. App. 601, 606.) Defendant was
required to exercise reasonable care for the safety of
all persons using the crossing by its invitation, ex-
press or implied, and the allegations and the proof
showed that plaintiff was using the crossing at the
time of the accident upon defendant's implied invita-
tion. (*Illinois Cent. R. Co. v. Hopkins,* 200 Ill. 122,
124; *Franey v. Union Stock Yards & Transit Co.*, 235
Ill. 522, 526; *Purtell v. Philadelphia & R. Coal & Iron
Co.*, 256 Ill. 110, 114.) And, by the action of the trial
court in directing the jury not to consider the first
count of plaintiff's declaration, they could not prop-
erly consider defendant's sole negligence in failing to
maintain a flagman under the second count, because
the only negligence charged in the latter count was
that of the crew in the management and operation of
defendant's locomotive engine.

Defendant's counsel contend that, even if the trial

court committed error in giving the instructions mentioned, the error was harmless, because under section 29 of the Illinois Workmen's Compensation Act [Cahill's Ill. St. ch. 48, ¶ 229] plaintiff had no right to maintain the action. Plaintiff alleged and proved that at the time of the accident he and his employer, Magner Winslow Company, were working under and subject to the provisions of said Act. Plaintiff further alleged and proved that defendant at the time was engaged in interstate commerce. And the court instructed the jury that said Compensation Act "has no application to the case." The proof disclosed in substance that the crew of the engine got it at defendant's roundhouse and, at the time of the accident, were backing it from the roundhouse to a train shed to couple onto a train; that the engine had in all respects been prepared for its daily trip from Chicago to Rockford, Illinois; and that the train regularly and on the day of the accident carried interstate express matter. Under these circumstances we think that defendant in operating the train was engaged in interstate commerce (*United States v. Colorado & N. W. R. Co.*, 157 Fed. 342; 157 Fed. 321; *Cleveland, C. C. & St. L. R. Co. v. Industrial Commission*, 294 Ill. 374); and in backing the engine to the train shed to haul away the train was also so engaged (*North Carolina R. Co. v. Zachary*, 232 U. S. 248, 260; *Moore v. Wabash R. Co.*, 299 Ill. 596, 604; *Jeneary v. Chicago & I. Traction Co.*, 306 Ill. 392, 396); and, being so engaged, plaintiff's action could properly be maintained (*Goldsmith v. Payne*, 300 Ill. 119, 121; *Stevens v. Illinois Cent. R. Co.*, 306 Ill. 370, 374).

Plaintiff's counsel also urges that the trial court committed reversible error in giving other instructions offered by defendant. Inasmuch as the judgment in our opinion should be reversed and the cause remanded for a new trial because of the giving of the two instructions above mentioned and discussed, and

as the errors in the giving of the other instructions (if any errors there were) are not likely to be repeated, we deem it unnecessary to discuss said other instructions.

The judgment of the superior court is reversed and the cause remanded.

*Reversed and remanded.*

FITCH, P. J., and BARNES, J., concur.